Benjamin Brenner, J.
Plaintiff argued on trial that there was prima facie evidence of violation by the defendant general contractor of section 240 of the Labor Law in accordance with my own holding in the case of Cole v. Long Is. Light. Co. (24 Misc 2d 221). He urged that, upon the evidence adduced, the general contractor impliedly permitted the use of the unsafe scaffold supplied by plaintiff’s employer, the subcontractor, and had previously cautioned the latter against the use of a nearby and similarly unsafe scaffold; that such showing of both permissive use and instruction sufficiently met the requirement of 11 directing another to perform labor of any kind ” as a basis for liability under the language of the statute.
It is quite true that after collating and distinguishing the cases dealing with the term “ directing another to perform labor of any kind ”, 1 did conclude in the Cole case that if liability under the statute were to be found, the general contractor must be shown to have either created, supplied or permitted the use of the faulty facility, and also to have given instruction or advice concerning its use.
In the case at bar, the safety engineer for the defendant general contractor stated that he would not allow the use of a certain scaffold unless guardrails were thereto attached. This, however, was not the scaffold upon which the plaintiff ivas injured, although it was but 10 feet distant therefrom. On these facts there was no prima facie showing of violation of the statute for several reasons.
In the first place, direction with respect to the use of an appliance or a phase of the work other than that which proximately caused the injury would not be sufficient to satisfy the requirements of the statute (Davis v. Caristo Constr. Corp., 13 A D 2d 382). Secondly, the direction which actually was given is of a negative nature, not to use a faulty facility, which, again, is legally insufficient to satisfy the statutory requirements for direction; and it will be seen on a reading of Cole (supra), that the direction, instruction or advice there given by the general contractor was of a positive nature, i.e., direction to move the planks thereon in the course of such use.
Moreover, the cases seem to lay stress on the positive nature of the words ‘ ‘ employing or directing another to perform labor of any kind ” as a prerequisite for creating the duty under the statute to supply a safe facility. They plainly stress a sort of *1038 affirmative assurance for safe use (Mendes v. Caristo Constr. Corp., 5 A D 2d 268, affd. 6 N Y 2d 729). Incidentally, the latter case would seem to be contra to my holding in Cole (supra), in that the facility need not be both supplied and its use directed. Supply apparently implies direction for use, so either of these is sufficient. The disjunctive word “ or ” to be found in the Mendes case (supra), indicates this. Hence, all that is needed is that the facility be supplied or its use plainly directed. Here it must be pointed out that the word ‘1 supply ’ ’ is not synonymous with the term “permissive use” and that permissive use alone continues to be insufficient (Glass v. Gens-Jarboe, 280 App. Div. 378, affd. 306 N. Y. 786). But the actual furnishing or supplying of the faulty facility would bring the owner within the requirements of the statute (Wolfe v. Baroudi, 20 A D 2d 950; Galbraith v. John B. Pike & Son, 18 A D 2d 39).
A further illustration of the positive nature of the direction or the degree of control over the phase of the work and site of injury that seems to be required may be found in Davis (supra). In that case the court made it clear that it must be shown that the general contractor gave direction “in the aspect of the work that led to the accident, or had assumed control over that phase of the work ” (p. 386). Indeed, a mere enigmatic nod on the part of the employee of the owner in that case as to the use of the facility was deemed to be insufficient. It was there made clear that the mere expression of inadequacy of the facility for the purpose intended did not create a prima facie case of liability under the statute. The plain import of the opinion was that there could be such liability under section 240 of the Labor Law on the part of the codefendant, general contractor, if it were found that its superintendent had actually directed the use of the scaffold which proximately caused the injury, until a safer one was substituted.
Of course, if it be claimed that the owner or general contractor gave direction in the performance of labor because of actual involvement in the construction or erection of the faulty facility itself, there must be clear participation in the manner or method of its construction or erection. Thus, in Mulligan v. Cauldwell-Wingate Co. (18 A D 2d 887), mere orders regarding the time or place of use of the facility are not enough.
The conclusion to be drawn from these holdings is that “directing another to perform labor” within the meaning of section 240 of the Labor Law requires (1) the furnishing of an appliance which, in and of itself, may be regarded as a direction for its use (Galbraith v. John B. Pike & Son, *1039 supra; Mendes v. Caristo Constr. Corp., supra); or (2) clear and unmistakable participation in the manner or method of its very erection (Mulligan v. Cauldwell-Wingate Co., supra), or (3) positive direction to the injured plaintiff in the use of the appliance (Davis v. Caristo Constr. Corp., supra; Mulligan v. Cauldwell-Wingate Co., supra).
There is no legal basis for plaintiff’s claim that the defendant may be held accountable on the theory of common-law negligence, because it undertook but failed to act out its self-appointed status of the “good Samaritan It is urged that since the defendant’s safety engineer had threatened to prevent the use of the nearby unsafe scaffold, the defendant was thereupon duty-bound to actively prevent the use of the unsafe scaffold upon which plaintiff was injured. The situation may be likened to that of a defendant owner who informs the city to repair an abutting sidewalk, and then permits passersby to make use thereof before the city makes the repair. Certainly, no common-law negligence can be ascribed to an owner who assumes the part of the “ good Samaritan ” unless he himself undertakes to make a repair and does so without reasonable care.
The owner or general contractor is never punished for mere concern and subsequent passivity relative to the unsafe facility, neither furnished by him nor under his control, since he has no duty to remove the danger. Though he has no such common-law duty, if he gives an assurance of safety as to its use, he may then be liable under common-law negligence (Broderick v. Cauldwell-Wingate Co., 301 N. Y. 182). Thus, where the owner who had no such duty recognized that the facility was unsafe and, acting as a “good Samaritan ”, indicated to the subcontractor who was erecting and using the scaffold that it was unsafe, the court held that this was insufficient for a prima facie case of common-law negligence (Davis v. Caristo Constr. Corp., supra). This was the situation in the instant case. The contractor’s safety engineer merely warned against the use of the faulty facility and should not be held accountable, in the absence of any claim of affirmative tort on his part, simply because he advised safety.
Clearly, then, there was no showing by this plaintiff of common-law negligence or of violation of section 240 of the Labor Law. The defendant is entitled to dismissal of the complaint for plaintiff’s failure to establish a prima facie case.